NOT FOR PUBLICATION                                                     CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERESA CUEVAS, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Case No. 12-4644 |
| v. | **Opinion & Order** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | Date: May 8, 2013 |
| Defendant. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Plaintiff's motion to review a final determination of the Commissioner of the Social Security Administration pursuant to the Social Security Act, as amended, 42 U.S.C. § 405(g). The motion has been decided upon the written submissions of the parties pursuant to Fed. R. Civ. P. 78.

**I. BACKGROUND**

    **A. Plaintiff's Medical and Vocational History**

Plaintiff Theresa Cuevas is a 52 year-old woman with a high school degree who worked as a bookkeeper for fifteen to twenty years. (R. 17, 30.) As a bookkeeper, Plaintiff handled the finances and accounts payable at two separate companies. (R. 30.) In September 2007, during her divorce, Plaintiff began to experience depression, hypertension, high cholesterol, and status-post gastric ulcer, and left her job. (R. 13-14.)

Plaintiff was originally admitted to JFK Medical Center in September 2006, with a gastric ulcer. (R. 247.) By December 2006, the findings of her treating physician Michael S.

1

Goldberg, M.D., determined that the ulcer had healed and that she had responded well to the anti-inflammatory drug Protonix. (R. 216.) In November 2007, Plaintiff was admitted to Trinitas Hospital complaining of mood swings and difficulty sleeping. (R. 252-3, 271, 276, 283.) During this hospital visit, the Department of Behavioral Health noted Plaintiff's global assessment functioning ("GAF") was 45.[1] (R. 253.) It was also noted that Plaintiff was alert and oriented, her attention and concentration were good to fair, her memory was good, and her thought process and content were normal. (R. 253.) Plaintiff was diagnosed with depression and hypertension and treated with Lexapro and Wellbutrin. (R. 254.)

By 2008, doctors observed improvements in Plaintiff's health. (R. 255, 314-16.) Pradip Gupta, M.D., conducted a psychiatric evaluation of Plaintiff on August 4, 2008, rating her with a GAF of 55.[2] (R. 316.) By December 2008, Plaintiff began treatment at University Behavior Healthcare with Dr. Sarah Young, where records show that Plaintiff's symptoms of depression were related to deaths in the family, divorce, and financial issues. (R. 342, 354, 405, 435, 439, 444.) The records also show that her symptoms improved with medication and therapy. (R. 333, 363, 366, 370, 373, 407, 409.) By May 5, 2010, Dr. Young stated that Plaintiff's depression appeared to be in remission. (R. 373.)

### B. Procedural History

Plaintiff filed an application for disability insurance benefits on May 28, 2008 alleging disability beginning on September 29, 2007 for depression, nervousness, and anxiousness. (R.

---

[1] GAF measures the psychological, social, and occupational functioning levels of an individual. Torres v. Barnhart, 139 Fed. Appx. 411, 415 n.2 (3d Cir. 2005) (citing American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")). A GAF score falling between 41 and 50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. Id. at n.4.

[2] A GAF score falling between 51 and 60 indicates moderate impairment in social or occupational functioning. Cherry v. Barnhart, 29 Fed. Appx. 898, 899 (3d Cir. 2002) (citing DSM-IV).

2

11, 116-17.)  After Plaintiff's application was initially denied and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (R. 58-62, 68, 70-2, 73-8.)  A hearing before ALJ Michal Lissek was held on July 13, 2010.  (R. 24- 55.)  Plaintiff testified at the hearing before the ALJ and there was testimony from vocational expert ("VE") Rocco Miola. (R. 24.)  On September 29, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.  (R. 11-19.)  Plaintiff then requested that the Appeals Council review the ALJ's decision.  (R. 6.)  The Appeals Council denied Plaintiff's request on May 23, 2012, which rendered the ALJ's decision final.  (R. 1-5.)

### C.  Standard for a Finding of Disability

The Social Security Act defines disability as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is any "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).  An individual will only be considered disabled "if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

When determining disability claims, the Commissioner applies a five-step analysis. 20 C.F.R. §§ 404.1520, 416.920.  The steps proceed as follows.

Step One: Substantial Gainful Activity.  The Commissioner must first determine whether the claimant is presently employed, and whether that employment is substantial gainful activity. 20 C.F.R. § 416.972. Substantial activity is work "that involves doing significant physical or

3

mental activities." 20 C.F.R. § 416.972(a). Gainful activity is any work "that you do for pay or profit." 20 C.F.R. § 416.972(b). If the Commissioner concludes that an individual is substantially and gainfully employed, then that person cannot be disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b).

 Step Two: Severe Impairment. If the claimant is not employed in substantial gainful activity, then he or she must show the existence of a severe impairment. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimant does not present a severe impairment or combination of impairments considered severe, then that person will not be found disabled. Id.

 Step Three: Listed Impairment. If the claimant proves the existence of a severe impairment, the Commissioner then determines whether that impairment meets or equals a listed impairment in Appendix 1 of 20 C.F.R. § 404, Subpart P. If the impairment is found to meet or equal one of the listed impairments, then the claimant is disabled. 20 C.F.R. § 416.920(d).

 Step Four: Residual Functioning Capacity. In Step Four, the Commissioner must determine whether, despite the claimant's impairment, the claimant still possesses the residual functioning capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 416.920(e). RFC is the claimant's ability to work on a sustained basis despite her physical or mental limitations. The RFC assessment is not a decision as to whether a claimant is disabled, but is used to determine the particular types of work a claimant may be able to perform despite her impairment(s). See 20 C.F.R. § 416.945. If the claimant does possess the RFC to perform her past relevant work, she is found not to be disabled and the inquiry proceeds no further. If not, the Commissioner moves on to the fifth and final step. 20 C.F.R. § 416.920(e)-(f).

Step Five: Other Work.  If the claimant cannot perform her past work, in Step Five the Commissioner must then consider the claimant's RFC, age, education, and past work experience to determine whether that person can perform other work.  20 C.F.R. § 416.920(g).  If not, the claimant is found disabled.  Id.

This five-step analysis has a shifting burden of proof.  Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  The burden rests on the claimant in the first four steps.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  However, the burden shifts to the Commissioner in the fifth step to prove that the claimant is able to adjust to other work available in the national economy.  Id.

**D. The ALJ's Decision**

Here, the ALJ evaluated Plaintiff's claim pursuant to the five-step analysis outlined above.  (R. 13-18.)  At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.  (R. 13.)  At Step Two, the ALJ found that Plaintiff's depression, hypertension, high cholesterol, and status-post gastric ulcer were severe impairments.  (R. 13.)  Specifically the ALJ found that Plaintiff's depression required psychotropic medication and therapy, and that her physical impairments caused significant limitations in heavy lifting and carrying.  (R. 13.)  At Step Three, the ALJ found that Plaintiff's impairments did not meet or equal any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.[3]  (R. 13-15.)  At Step Four, the ALJ found that given her impairments, Plaintiff had the RFC to perform the full range of light work, except that she should be limited to tasks that could be learned in one month or less that did not require significant amounts of reading, writing,

---

[3] Specifically, the ALJ found that Plaintiff's impairments did not meet the criteria of Listings 5.00 (Digestive System) and 12.04 (Affective Disorders).  (R. 13-15.)

5

or math, and she should have occasional contact with supervisors, co-workers, and the general public. (R. 15.) From these findings, the ALJ determined that Plaintiff could not perform her past relevant work as a bookkeeper. (R. 17.) At Step Five, the ALJ relied on testimony of the vocational expert in response to the ALJ's hypothetical questions and the Medical-Vocational Guidelines to find that Plaintiff was not disabled. (R. 18.)

## II. DISCUSSION

### A. Standard of Review

This Court can review the factual findings of the ALJ to determine whether the administrative record contains substantial evidence for such findings, pursuant to 42 U.S.C. § 405(g). Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). So long as there is substantial evidence to support the Commissioner's findings, then this Court must uphold the decision even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

### B. Review of Commissioner's Decision

Plaintiff challenges the Commissioner's decision on grounds that the ALJ's denial of benefits is not supported by substantial evidence. Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence, and the hypothetical that the ALJ posed to the VE did not accurately reflect Plaintiff's RFC.

1. ALJ's Residual Functioning Capacity Determination

If the ALJ finds that claimant's severe impairments do not reach a level of a listed impairment, then the ALJ must conduct an RFC assessment. Plummer v. Apfel, 186 F.3d 422,

6

428-29 (3d Cir. 1999). In making an RFC assessment, the ALJ must consider all evidence before her. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000). Courts have remanded cases where an ALJ failed to explicitly reject contradictory findings or testimony available in the record. See, e.g., Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994) (finding that the ALJ failed to weigh testimony of claimant's primary physicians). The ALJ need only include in the RFC those limitations that she finds to be credible. Salles v. Comm'r of Soc. Sec., 229 Fed. Appx. 140, 147 (3d Cir. 2007).

At Step Four, the ALJ found that Plaintiff had the RFC to perform the full range of light work, except that she would be limited to tasks that could be learned in one month or less, involved occasional contact with supervisors, co-workers, and the general public, and did not require significant amounts of reading, writing, or math. (R. 15.) Plaintiff contends that this RFC finding does not include Plaintiff's moderate difficulty in her ability to maintain concentration, persistence and pace,[4] and thus is not supported by substantial evidence in the record.

The ALJ here properly considered evidence from the entire record in determining Plaintiff's RFC and substantial evidence supports the ALJ's assessment. The ALJ determined that Plaintiff's depression, hypertension, high cholesterol, and status-post gastric ulcer were severe impairments that limited her past work, but did not inhibit all other work. (R. 13-15.) The ALJ considered the record evidence and found that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b), except that she was limited to job tasks that could be

---

[4] When discussing Plaintiff's impairments at Step Three and evaluating "paragraph B" criteria to determine if Plaintiff's mental impairment was severe enough to meet or equal a listed impairment, the ALJ noted the Plaintiff had moderate limitation in her ability to sustain concentration, persistence, and pace. (R. 14.) This inquiry at Step Three is different than the RFC assessment, which requires a more detailed assessment, although the ALJ noted that the degree of Plaintiff's limitation was reflected in the RFC assessment. (R. 14.)

learned in one month or less,[5] involved occasional contact with others, and did not require significant amounts of reading, writing, or math. The ALJ determined that Plaintiff should have limited contact with others because the evidence, including records from Trinitas Hospital and University Behavior Healthcare, showed that Plaintiff had depression that was related to her divorce and other personal circumstances. (R. 17, 276, 405, 435, 439, 444.) With respect to jobs involving significant amounts of reading, writing, or math, the ALJ considered medical records from Dr. Gupta. (R. 17.) Although Dr. Gupta found that Plaintiff was alert to person, place, and time, he also noted that she was limited to simple arithmetic and calculations.[6] (R. 315.) Reports from Dr. Gupta and medical consultant Dr. Joan Joynson also showed that while Plaintiff is moderately limited in her ability to understand, remember and carry out short, simple instructions, these limitations do not affect her ability to sustain adequate concentration, persistence or pace for simple routine work, follow moderately complex directions, adapt to workplace changes for simple work, and respond appropriately to supervision. (R. 315, 333.) Medical records also show that Plaintiff's doctors had found that her verbal processes and thought processes and content were normal. (R. 253, 418, 440-41.) Notably, over time Plaintiff's treating doctors whom she regularly saw felt that she improved with treatment and medicine. (R. 333, 363, 366, 370, 373, 407, 409.) Plaintiff's medical records and the opinions from Dr. Gupta and Dr. Joynson provide substantial evidence to support the ALJ's RFC determination that Plaintiff was able to participate in light work with several limitations.

2. Hypothetical to the Vocational Expert

---

[5] This finding is consistent with the Commissioner's definition of "unskilled work," which is work that needs little or no judgment to do simple duties that a person can usually learn to do in fewer than thirty days. 20 C.F.R. § 404.1568(a).

[6] Plaintiff could not complete "serial 7" and "serial 3" calculations. (R. 315.) A "serial 7" calculation is one in which the claimant must subtract in intervals of seven from 100. A "serial 3" calculation is one in which the claimant must subtract in intervals of three from 100.

Plaintiff also argues that in posing a hypothetical situation to the vocational expert during the hearing, the ALJ did not convey all of Plaintiff's established mental limitations. (Pl. Br. 25-6.) Plaintiff asserts that hypothetical questions to vocational experts are meant to mimic the claimant's condition, but that the ALJ here erred in Step Five by failing to include in the hypothetical a moderate limitation in the ability to sustain concentration, persistence, and pace.[7] (Pl. Br. 21.)

The ALJ is allowed to pose hypotheticals to a VE to aid in determining whether jobs exist in the national economy for people in the claimant's position. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). The ALJ's hypothetical must reflect all of the claimant's impairments that are supported by the record. Id.; Burns v. Barnhard, 312 F.3d 113, 123 (3d Cir. 2002) (finding that if any medically undisputed evidence from the record is not included in the ALJ's hypothetical, then the VE's response is not considered substantial evidence).

Here, the ALJ told the VE to consider an individual with the vocational profile of the Plaintiff and assume that due to the individual's depression and inability to concentrate, she was restricted to light work and job tasks that could be learned in one month or less. (R. 42.) The

---

[7] Plaintiff also contends that the ALJ disregarded the VE's testimony that someone with a GAF between 45 and 55 cannot work in the competitive labor market and would need job training, thereby eliminating substantial gainful activity from potential employment for Plaintiff. Plaintiff mischaracterizes this testimony. The VE testified that a GAF of 45 to 55 would indicate that "the person has moderate difficulties in terms of dealing with work and educational processes and *may* not be able to work in the competitive labor market immediately. *May* need to be trained or *may* need to have some assistance like a job coach at a job site." (R. 48 (emphasis added).) The VE also testified that a GAF score is just one of the indicators to consider. (R. 48.) This testimony does not conflict with the other probative evidence in the record. While a GAF score in the 40's may indicate serious impairments, Plaintiff's most recent GAF score was 55 and a GAF score in the 50's indicates only "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34. As discussed in this opinion, the ALJ's own questions to the VE conveyed the limitations represented by Plaintiff's most recent GAF score of 55. (R. 42-43.) Considering the entire record, there is substantial evidence that shows that Plaintiff is able to work in the competitive labor market, albeit with the restrictions that the ALJ identified in her RFC assessment.

9

ALJ further highlighted that the individual could perform work involving only occasional contact with supervisors, co-workers, and the general public, and which did not require significant amounts of reading, writing, or math. (R. 42.) Based on the hypothetical and the U.S. Department of Labor's Dictionary of Occupational Titles ("DOT"), the VE opined that a claimant with such limitations could perform jobs such as inspector, microfilm processor, decal applier, and tag machine operator, all which exist in substantial numbers in the national economy. (R. 42-3.)

In posing this hypothetical to the VE, the ALJ included all of Plaintiff's limitations that were credibly established by the record. The ALJ specifically noted in the hypothetical that Plaintiff had an "inability to concentrate" in addition to highlighting other findings, such as limiting job tasks and contact with other people. (R. 42.) The Third Circuit has found that when an ALJ's hypothetical limits a claimant's job tasks to simple or routine ones, it accounts for a claimant's moderate limitations in concentration, persistence, and pace. Menkes v. Astrue, 262 Fed. Appx. 410, 412 (3d Cir. 2008) (determining that the ALJ accounted for claimant's "moderate limitations in concentration, persistence and pace" in the hypothetical by restricting the type of work to "simple routine tasks"); see also McDonald v. Astrue, 293 Fed. Appx. 941, 946 (3d Cir. 2008) (finding that the ALJ correctly limited the hypothetical to "simple, routine tasks" where the claimant had "moderate limitations with his ability to maintain concentration, persistence and pace").[8] The ALJ here limited Plaintiff to job tasks that were simple enough to be learned in one month or less, and to tasks that required little to no amount of reading, writing,

---

[8] Courts in this district have routinely held that such hypotheticals are proper. See, e.g., Padilla v. Astrue, No. 10-4968, 2011 WL 6303248, *10 (D.N.J. Dec. 15, 2011); Elliott v. Astrue, No. 11-2293, 2012 WL 2870912, *8 (D.N.J. July 12, 2012); Bryant v. Astrue, No. 10-5771, 2012 WL 664829, *9 (D.N.J. Feb. 29, 2012).

or math. (R. 15.) This limitation to simple tasks accounts for the Plaintiff's limitations in concentration, persistence, and pace.[9]

Moreover, although Plaintiff did have some limitations in concentration, persistence, and pace, the record evidence shows that Plaintiff could still carry out simple routine work. In Plaintiff's first visit to the Department of Behavioral Health in 2007, it was noted that Plaintiff was alert and oriented, her attention and concentration were good to fair, her memory was good, and her thought process and content were normal. (R. 253.) Dr. Joynson later found that Plaintiff was able to sustain adequate concentration, persistence, and pace for simple routine work and that Plaintiff could follow moderately complex directions, adapt to workplace changes for simple work and respond appropriately to supervision. (R. 333.) Furthermore, upon first evaluation, Dr. Young reported that Plaintiff's concentration, attention, and memory were intact, (R. 441), and thereafter noted that Plaintiff sustained attention during the interviews. (R. 361, 363, 366, 370, 373, 407.) Although Plaintiff was diagnosed with depression and had difficulty sleeping and difficulty performing activities, Plaintiff's treating doctors have continuously noted improvement in her depression. (R. 333, 363, 366, 370, 373, 407, 409.)

Therefore, the ALJ's hypothetical to the VE accounted for all credibly established medical findings in the record and as determined by the ALJ. Furthermore, since the VE's opinion was that Plaintiff could perform a significant number of jobs in the national economy, the ALJ's Step Five finding that Plaintiff is not disabled is supported by substantial evidence.

---

[9] While Plaintiff's counsel asserts that he was not allowed to ask the VE questions based on "moderate" limitations, the ALJ's questions to the VE had already conveyed Plaintiff's limitations. Furthermore, while Plaintiff's counsel attempted to ask the VE a question about Plaintiff's moderate limitations based on the Section I of the Mental RFC Assessment form filled out by Dr. Joynson (R. 49), the Third Circuit has explained that Section I of such forms does not constitute the RFC assessment and numerous district courts have held that Section I of the form may be assigned little or no weight. Smith v. Astrue, 631 F.3d 632, 636-67 (3d Cir. 2010) (citing Social Security Administration guidelines and cases).

11

**III. CONCLUSION & ORDER**

For the foregoing reasons, **IT IS** on this 8th day of May, 2013, hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED**; and it is further

**ORDERED** that this case is **CLOSED**.

**/s/ Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.
